UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 16-51(DSD/BRT)

Northern States Power Company
agent of Xcel Energy,

        Plaintiff,

v.                                               **ORDER**

TriVis, Inc.,

        Defendant,

v.

Underwriters at Lloyds, London,

        Garnishee.

    James J. Hartnett, Esq., Kyle R. Hardwick, Esq. and Faegre Baker Daniels LLP, 90 South 7th Street, Suite 2200, Minneapolis, MN 55402, counsel for plaintiff.

    Jeanne H. Unger, Esq. And Bassford Remele, PA, 33 South 6th Street, Suite 3800, Minneapolis, MN 55402, counsel for garnishee.

    This matter is before the court upon the motion by plaintiff Northern States Power Company, d/b/a Xcel Energy (Xcel), requesting leave to file a supplemental complaint. Based on a review of the file, record, and proceedings herein, and for the following reasons, the court grants the motion.

**BACKGROUND**

    This garnishment dispute arises out of work that defendant TriVis, Inc. performed at Xcel's Monticello Nuclear Generating Plant (MNGP). On March 18, 2013, Xcel and TriVis entered into a

contract for TriVis to perform certain work at the MNGP.  Supp. Compl. ¶ 20.[1]  Specifically, Xcel paid TriVis to load spent nuclear fuel rods and assemblies from a spent fuel pool into dry cask storage containers (DCSCs), weld the DCSCs shut, inspect the welds, and transport the DCSCs to an independent storage area.  Id. ¶¶ 21, 25.  TriVis agreed to a number of provisions regarding the quality of its employees and their supervision at MNGP.  Id. ¶¶ 22-24.

TriVis also agreed to purchase commercial general liability insurance and professional liability insurance.  Id. ¶ 26.  On September 27, 2013, defendant-garnishee Certain Underwriters at Lloyd's, London (Lloyd's) issued a professional liability policy to TriVis.  Id. ¶ 49; Hardwick Decl. Ex. F.  The policy is governed by New York law, and states that Lloyd's will "pay on behalf of [TriVis] those sums which [TriVis] shall become legally obligated to pay ... arising out of any negligent act, error or omission in rendering or failing to render PROFESSIONAL SERVICES by [TriVis] or by any person for whose negligent act, error or omission [TriVis] is legally responsible ...."  Hardwick Decl. Ex. F, at 8, 36.  The policy defines "PROFESSIONAL SERVICES" to include "services provided by [TriVis] ... acting in the capacity of a[] ...

---

[1] As explained below, Xcel has two weeks from the date of this order to file a revised supplemental complaint that references National Union's commercial umbrella liability policy.  However, the parties do not dispute the facts of the case, and the court will cite to the allegations of the currently proposed supplemental complaint for purposes of this motion.

construction manager ....” Id. at 23.  The policy also states the following:

> As a condition precedent to coverage if any CLAIM is made against [TriVis], whether or not the alleged DAMAGES fall within or in excess of the Self-Insured Retention, [TriVis] shall have the duty to immediately give written notice to [Lloyd's] representatives.
>
> Such written notice must contain details of the CLAIM, the exact date the CLAIM was first made, the location, the circumstances giving rise to such CLAIM, the identity of all claimants and a full description of the nature and scope of the alleged DAMAGES.  [TriVis] must immediately forward every demand, notice, summons or other process received by it or its representative, upon receipt thereof, to [Lloyd's] representatives, as per Item 9 of the Declarations.

Id. at 25.

TriVis also obtained insurance from National Union.  Supp. Compl. ¶ 42; DeVito Decl. Exs. A, B, and E.  Relevant to this dispute, National Union issued a commercial umbrella liability policy to TriVis, effective from September 30, 2012, to September 30, 2013 (the umbrella policy).  DeVito Decl. Ex. E.  National Union also issued a second commercial umbrella liability policy and a commercial general liability policy, which were both effective from September 30, 2011, to September 30, 2012 (the out-of-date policies).  DeVito Decl. Exs. A and B.

TriVis began work under the contract on July 1, 2013, and by October 17, 2013, had finished work on five DCSCs and moved them from MNGP.  Id. ¶¶ 27-28.  That day, while working on a sixth DCSC,

a regulatory inspector observed TriVis employees perform work contrary to procedure and regulation, and in a manner which Xcel alleges was negligent. <u>Id.</u> ¶¶ 29-31. Xcel suspended TriVis' performance under the contract. <u>Id.</u> ¶ 31. Further review of videotapes at MNGP revealed similar procedural deviations for the previous five DCSCs, which called into question the integrity of the welds. <u>Id.</u> ¶ 32. Federal regulators have required that Xcel keep the sixth DCSC on-site in a specialized transfer cask while the Nuclear Regulatory Commission investigates the matter. <u>Id.</u> ¶¶ 35-37.

On January 10, 2014, Xcel submitted a claim against TriVis. <u>See</u> Smith Decl. Ex. B, at 1. On January 13, 2014, TriVis provided notice to Lloyd's and requested coverage for the claim. Smith Decl. ¶ 7; <u>id.</u> Ex. B. On March 15, 2014, Lloyd's denied coverage, stating that it did "not admit any liability for coverage of said claim" and disputing "whether the services at issue are encompassed within the particular 'professional services' identified as covered under the policy." Redmon Decl. ¶ 5; <u>id.</u> Ex. E, at 3 (footnote omitted). TriVis never tendered Xcel's claim to National Union. DeVito Decl. ¶ 5.

In September or early October 2014, Xcel submitted a notice of claim directly to Lloyd's and National Union. Supp. Compl. ¶ 57. Xcel's notice of claim explained its damages and requested insurance proceeds from both Lloyd's and National Union. <u>Id.</u> ¶ 58.

On October 8, 2014, TriVis filed articles of dissolution with the Alabama Secretary of State.  Unger Decl. Ex. D.  On October 22, 2014, Lloyd's responded to Xcel and denied coverage, asserting that its policy does not cover the services TriVis provided.  Id. ¶¶ 61-62.  National Union acknowledged receipt of Xcel's notice of claim, but failed to provide a substantive response and ignored Xcel's repeated requests for information.  Id. ¶¶ 59-60.

On September 25, 2015, Xcel initiated an action against TriVis in Hennepin County District Court for damages caused by TriVis' allegedly negligent performance.  Id. ¶ 63.  Trivis failed to answer or otherwise appear.  Id. ¶ 64.  On December 4, 2015, the court entered default judgment against TriVis in the amount of $10,020,355, plus pre- and post-judgment interest and awarded Xcel its costs and disbursements.  Id. ¶ 67; Hardwick Decl. Ex. D.

On December 21, 2015, Xcel served National Union with a garnishment summons.  Supp. Compl. ¶ 68.  National Union failed to respond.  See id. ¶ 69.  On December 22, 2015, Xcel served Cincinnati Speciality Underwriters Insurance Company (CSU)[2] with a garnishment summons.  ECF No. 1 ¶ 3.  On January 4, 2016, Xcel served Lloyd's with a garnishment summons.  Supp. Compl. ¶ 71.  On January 25, 2016, Lloyd's responded, asserting that it does not possess any personal property, instruments, or papers belonging to

---

[2] CSU has since been discharged and is no longer a party to this case.

TriVis, and that its policy does not provide coverage for Xcel's default judgment against TriVis.

On January 8, 2016, CSU removed the garnishment action from Hennepin County to this court. ECF No. 1. Lloyd's joined in the removal on January 25, 2016. ECF No. 18.[3]

On February 16, 2016, Xcel filed the instant motion, requesting leave to file a supplemental complaint under the garnishment statute. ECF No. 26. In the supplemental complaint, Xcel seeks garnishment against National Union and Lloyd's, and a declaratory judgment that defendants are liable for the default judgment. Supp. Compl. ¶¶ 74-88.

## DISCUSSION

### I.   Standard of Review

Under Minnesota law, if a creditor possesses a judgment against a debtor who owns an insurance policy that may be a source of recovery, the creditor may bring a garnishment action directly against the insurer of the judgment debtor (i.e., the garnishee). See Buysse v. Baumann-Furrie & Co., 448 N.W.2d 865, 870 (Minn. 1989); Gudbrandsen v. Pelto, 287 N.W. 116 (Minn. 1939). If the

---

[3] Xcel requested that the court make a determination as to the sufficiency of Lloyd's notice of joinder in removal. See ECF No. 42, at 2-4. The court issued an order to show cause requiring that Lloyd's submit additional documentation to establish diversity jurisdiction. ECF No. 56. Based on that additional documentation, the court is satisfied that diversity jurisdiction exists. See Marsden Decl. ¶¶ 1-5.

garnishee denies liability, the creditor may move the court for an order granting the creditor leave to file what is referred to as a "supplemental complaint" against the garnishee.   Minn. Stat. § 571.75, subd. 4.  The court must grant the motion if the creditor establishes probable cause.   <u>Id.</u>   When analyzing the "low threshold" of probable cause, the court should consider "whether the evidence shows probable grounds for believing that the garnishee <u>might</u> be held liable."  <u>McGlothlin v. Steinmetz</u>, 751 N.W.2d 75, 81 (Minn. 2008) (emphasis in original).

## II.  Lloyd's

Lloyd's asserts that its duty to provide coverage is void because TriVis breached its duty to provide immediate notice of Xcel's lawsuit in Hennepin County.   Xcel responds that Lloyd's disclaimer letter to TriVis excused TriVis' duty to provide notice of the lawsuit, and that Lloyd's insurance policy covers TriVis' liability.

Under New York law, "[o]nce an insurer repudiates liability ... the [in]sured is excused from any of its obligations under the policy."  <u>State Farm Ins. Co. v. Domotor</u>, 697 N.Y.S.2d 348, 349 (N.Y. App. Div. 1999); <u>see also</u> <u>Varda, Inc. v. Ins. Co. of N. Am.</u>, 45 F.3d 634, 637 (2d Cir. 1995)(excusing the insured's breach of contract if the insurer repudiated the claim before the breach occurred).  Effectively, "the insurance carrier must stand or fall upon the defense upon which it based its refusal to pay."  <u>Domotor</u>,

697 N.Y.S.2d at 350 (citation and internal quotations omitted).

Lloyd's admits that TriVis provided notice of Xcel's claim on January 13, 2014. Lloyd's Opp'n Mem. at 3. Lloyd's also admits that it repudiated liability when it sent a disclaimer letter to TriVis on March 5, 2014. Lloyd's Sur-Reply Opp'n Mem. at 1; Redmon Decl. ¶ 5. Thus, Lloyd's disclaimer letter excused TriVis' obligation to provide immediate notice to Lloyd's when Xcel initiated its lawsuit against TriVis on September 25, 2015, and Lloyd's cannot avoid coverage on that basis.

The court next turns to the substance of the policy. The parties dispute whether TriVis' negligent performance and supervision as a construction manager triggers coverage. The policy does not define the term "construction manager." "Undefined terms should be read in light of common speech and the reasonable expectations of a business person." David Lerner Assocs., Inc. v. Phila. Indem. Ins. Co., 934 F. Supp. 2d 533, 541 (E.D.N.Y. 2013) (citation and internal quotations omitted). In Continental Casualty Company v. JBS Construction Management, Inc., Civ. No. 09-6697, 2010 WL 2834898, at *5 (S.D.N.Y. July 1, 2010), the court found that a company charged with providing "on-site Project Management" and "supervising" the project site fit the definition of a "construction manager."

Here, TriVis agreed, under its contract with Xcel, to a number of conditions consistent with a common-sense understanding of what

it means to be a construction manager.  TriVis was required to provide "site supervisors."  Supp. Compl. Ex. B, at Ex. 1, § 3.2.5.  TriVis also agreed to "provide a dedicated, competent project management staff capable of managing the planning, control, implementation, and completion of the Services," including "areas of engineering, site management, field engineering, field craft supervision, subcontract management, quality assurance and quality control, safety, outage management, and project controls."  Id. Ex. B, at Ex. 1, § 7.3; id. Ex. B, at Ex. 6, §§ 1.1-1.3.  These duties are consistent with those of a construction manager.  Accordingly, Xcel has established probable grounds that Lloyd's might be held liable.

## III. National Union

Xcel asserts that the National Union policies cover a portion of TriVis' work at MNGP.  National Union has dodged this issue for at least fifteen months.

Xcel first contacted National Union in September 2014 regarding TriVis' negligent performance at MNGP.  Hardwick Supp. Decl. Ex. G.  National Union eventually acknowledged the existence of the out-of-date policies, but represented that the policies had been lost or misplaced.  Supp. Compl. ¶¶ 46-47; see also Hardwick Supp. Decl. Exs. H and I.

On December 21, 2015, Xcel served National Union with a garnishment summons.  Id. ¶ 68.  National Union did not respond.

See id. ¶ 69.  In fact, National Union admits that it is in default under the garnishment statute, but asserts that the default "is of no consequence to the eventual outcome of these proceedings." Nat'l Union Opp'n Mem. at 7.

On March 23, 2016, six days before the hearing on this motion, National Union disclosed portions of the out-of-date policies[4] and argued that they are inapplicable because they were not in effect at the time of loss.  DeVito Decl. Exs. A and B.  National Union also disclosed, for the first time, portions of the umbrella policy, which covers part of the loss period.  Id. Ex. E.

National Union concedes that, if all other policies are inapplicable or insufficient, the umbrella policy could cover at least a portion of TriVis' obligations to Xcel.  See Hrg. Tr. at 29:7-16 (stating that National Union could "be liable under the umbrella policy" if "the underlying insurance has been exhausted"). Xcel's $10 million default judgment certainly could exhaust the underlying insurance, whether that is Lloyd's policy or another presently unknown policy.  See Hardwick Decl. Ex. F, at 4; DeVito Decl. Ex. E, at 27 (providing liability limits of less than $10 million).  Accordingly, Xcel has established probable grounds that National Union could be liable under the umbrella policy.

National Union argues that Xcel's supplemental complaint is

---

[4] National Union did not explain how or when it located the out-of-date policies.

deficient because it only cites the out-of-date policies,[5] not the umbrella policy.  However, National Union cannot now benefit from its own misconduct.  National Union failed to disclose the umbrella policy - which covers part of the time when the loss occurred - until six days before the hearing and more than a year after Xcel first made National Union aware of TriVis' potential liability. Accordingly, the court grants Xcel's motion, and Xcel will have two weeks from the date of this order to file a revised supplemental complaint that references the umbrella policy.[6]

## IV.  Sanctions Against National Union

Xcel requests that National Union pay its costs and attorney's fees incurred in preparing a reply brief, based on National Union's untimely response brief and exhibits that were filed six days before the hearing.  The court declines to award those costs and fees, but will sanction National Union for its dilatory behavior.[7]

The court may punish a party by fine or imprisonment for misbehavior "in [the court's] presence or so near thereto as to obstruct the administration of justice."  18 U.S.C. § 401(1); see also Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec.

---

[5] The parties agree that the out-of-date policies do not apply to the losses at issue.

[6] The court will entertain a motion to amend the supplemental complaint if discovery reveals the existence of additional applicable policies.

[7] To be clear, sanctions are imposed against National Union and not its counsel.

11

Corp., 293 F.3d 409, 418 (8th Cir. 2002) ("As a general matter, when a litigant refuses to respect the authority of the court, it is not an abuse of discretion for the court to hold the litigant in contempt and impose a sanction to coerce compliance."). Sanctions serve dual purposes: they ensure a party's compliance with the rule of law and compensate the other party for the harm incurred by noncompliance. See Hartman v. Lynq, 884 F.2d 1103, 1106 (8th Cir. 1989). The party seeking a sanction "bears the burden of proving facts warranting such relief by clear and convincing evidence." Jake's, Ltd. v. City of Coates, 356 F.3d 896, 899-900 (8th Cir. 2004).

Xcel has provided clear and convincing evidence that sanctions are warranted. National Union misled Xcel as to the existence of insurance policies for over a year.[8] National Union has delayed this case, thereby obstructing the administration of justice and violating its first duty "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. For these reasons, the court finds National Union subject to sanctions under 18 U.S.C. § 401. The court awards Xcel

---

[8] When National Union finally disclosed the policies in its reply papers, it did so belatedly in violation of the court's local rules. See D. Minn. LR 7.1(b)(2) (requiring the responding party to file a response "[w]ithin 7 days after filing of a nondispositive motion"). Even under the lengthier dispositive briefing schedule, National Union's response was fifteen days overdue. See ECF No. 16 ¶ 3 (requiring the responding party to file a response at least 21 days before the hearing) (emphasis in original).

$500 in sanctions.

### CONCLUSION

Accordingly, based on the above, **IT IS HEREBY ORDERED** that:

1.    Xcel's motion requesting leave to file a supplemental complaint [ECF No. 26] is granted;

2.    Xcel has two weeks from the date of this order to file a revised supplemental complaint that references the umbrella policy; and

3.    National Union shall immediately pay Xcel $500 in sanctions.

Dated: May 6, 2016

<u>s/David S. Doty</u>
David S. Doty, Judge
United States District Court